UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| JARED DOUGLAS DIAZ | CIVIL ACTION |
| VERSUS | NO. 23-2559 |
| STEPHEN ENRIGHT, JR., ET AL. | SECTION "E" (2) |

## REPORT AND RECOMMENDATION

Plaintiff Jared Douglas Diaz filed a complaint pursuant to 42 U.S.C. § 1983 which was referred to a United States Magistrate Judge to conduct a hearing, including an evidentiary hearing, if necessary, and to submit proposed findings and recommendations for disposition, pursuant to 28 U.S.C. § 636(b)(1)(B) and (C), § 1915e(2), and § 1915A, and as applicable, 42 U.S.C. § 1997e(c)(1) and(2). Upon review of the record, the Court has determined that this matter can be disposed of without an evidentiary hearing.

## I.    FACTUAL ALLEGATIONS

Diaz is a convicted inmate housed in the B.B. "Sixty" Rayburn Correctional Center in Angie, Louisiana. ECF No. 4, ¶II, at 2. Diaz filed this *pro se* and *in forma pauperis* § 1983 complaint against fourteen defendants, each named only in their official capacity: (1) Stephen Enright, Jr., Jefferson Parish District Court Judge; (2) Paul Connick, Jr., Jefferson Parish District Attorney ("D.A."); (3) Gina Patin, Jefferson Parish Court Reporter; (4) Lynn Schiffman, then an Assistant District Attorney ("ADA") and now an Assistant United States Attorney ("AUSA"); (5) Brittany Beckner, Jefferson Parish Assistant District Attorney ("ADA"); (6) Nicole Abadie, Deputy Clerk of Court; (7) Renee Bourg. Jefferson Parish Assistant Public Defender; (8) Jennifer Terry, Special Agent for the Federal Bureau of Investigation ("FBI"); (9) Ian Donahue, Jefferson Parish Vice Squad Detective; (10) Michael Olivier, Sergeant with Jefferson Parish Sheriff's Office

("JPSO"); (11) William Hare, Lieutenant Commander with JPSO; (12) Megan Bates, victim in his criminal proceeding; (13) Eva Banner, Sergeant with JPSO; (14) Dr. Rafael Salcedo, Forensic Psychologist. *Id.*, ¶III(B)-(O), at 3-5. Diaz generally alleges that the defendants conspired to and deprived him of his constitutional rights during his criminal trial while acting under color of state or territorial law. *Id.* at 5-31 (Statement of Claim). He also claims racial discrimination during his criminal proceedings, but the court reporter did not transcribe the events which he details in his complaint. *Id.*

In support of his claims, Diaz alleges that on February 10, 2020, he proceeded to trial before Judge Enright in the 24th Judicial District Court for Jefferson Parish. *Id.* at 5. When asked during voir dire, several potential jurors, McGuire-Fishpaw, Delord, A. Diaz, Perdoma, and Banner told the court that they recognized Diaz. *Id.* at 5-6. McGuire-Fishpaw said Diaz had sex with her daughters but was not a sex trafficker because her daughters had heroin addictions. *Id.* at 6. He claims that she called him a racial slur and said Diaz should be found guilty because he is black. He further claims that the potential juror made other racial remarks such as black people should never have been given equal rights and should still be slaves to white people.

Diaz claims that juror Delord told the court that Diaz is a child molester and murderer. He claims Delord also indicated that he made false allegations of child abuse against Diaz because he had a relationship with the mother of one of Diaz's children, and she chose to go back to Diaz. Delord allegedly also told the court that Diaz killed someone when he was 16 years old. When questioned about his claims by Judge Enright, Delord could not provide factual details. *Id.* at 6-7. Diaz claims that Delord also pronounced that he was going to shoot Diaz and get away with it because Diaz is black and he was a white man in the military. *Id.* at 7. Diaz claims that Delord then threatened to attack Diaz. *Id.*

2

Diaz further claims that juror A. Diaz told the court that Diaz had a firearm with 30 bullets. She also told the court that she made false allegations against Diaz because he liked her friend better than her.  *Id.*

Diaz also asserts that juror Perdomo claimed that he went to school with Diaz and brought the mother of Diaz's son to his home to have sex.  Perdomo also claims that he was a professional fighter and wanted to beat Diaz.  Diaz claims that Perdomo said that Diaz's mother could "suck my dick" and that he was going to urinate on her grave.  Diaz further claims that Perdomo threatened to attack Diaz's family members.  *Id.*

Diaz contends that Judge Enright and then-ADA Schiffman laughed as the jurors made these statements.  *Id.*  He claims the Judge told the panel of jurors that, although the State had nothing on Diaz, the jurors were required to find him guilty.  *Id*. at 8.  He claims that the Judge then told Diaz's family that they would be dealt with if they tried to attend the trial or told others to attend.  *Id.* at 8.

Diaz claims that Judge Enright attempted to have personnel at the Jefferson Parish Correctional Center ("JPCC"), specifically, the jail's mail officer Linda Mercadel, Deputy Hayes, and defendant Deputy Banner with the Special Investigation Unit, to cause or have inmates at the jail cause Diaz bodily harm.  *Id.* at 8-9.  Mercadel and Hayes refused to do what the Judge asked. Banner, however, told the Judge she would convince inmates to harm Diaz, and she told Diaz he would die.  *Id*. at 9.  Diaz claims that ADA Schiffman intervened and told Banner that she would go to jail if anything happened to Diaz at JPCC.  *Id.*

Diaz alleges that a woman identified as Ms. Donna notified Judge Enright that Diaz was sexually abused as a child, and he told her that "Jared Diaz wanted it."  *Id.* at 9.  Diaz alleges Judge Enright then began to make sexual advances towards Diaz.  *Id.*

3

Diaz complains that Judge Enright refused to excuse a juror for cause after the juror was hostile towards Diaz and called Diaz a terrorist after the Judge announced to everyone that Diaz practices Islam. *Id.* Diaz claims that this person ended up on the jury, slept through the three-day trial, and, after seeing the Judge, ADA Schiffman, and ADA Beckner laugh, Diaz tried to wake up the juror. *Id.*

Diaz claims that another member of the jury was Schiffman's friend, although neither the juror nor Schiffman established their connection. *Id.*

Diaz further claims that both the Judge and Schiffman disclosed to everyone that Diaz was incarcerated in JPCC and disclosed his disciplinary record, including a fight with an inmate years ago who claimed Diaz murdered the inmates' brother. *Id*. at 9-10. He contends the Judge also told the entire courtroom that Diaz had to be stopped because he was in a cell with a convicted murderer and was teaching the inmate the law and putting together a crime organization in the jail. *Id.* at 10.

Diaz asserts that ADA Schiffman apologized for the criminal prosecution against him, professed her love for him and desire to marry him, and told Diaz that she wanted to dismiss the charges but Judge Enright forced her to prosecute the case. *Id*. at 10-11. When she tried to dismiss the charges, Judge Enright said Diaz was not going anywhere. *Id*. at 11.

Diaz also claims that JPSO Deputy Ismael Cornejo testified that, two weeks before trial, Schiffman contacted him to coerce him to testify falsely about the robbery although she knew Diaz was innocent. *Id.* He contends Cornejo further testified that Schiffman knew this based on Diaz's telephone calls from JPCC, which were introduced as exhibits at trial and not disclosed to defense. *Id*. at 11-12.

Diaz further claims that Sgt. Olivier tampered with evidence, obstructed justice, and testified falsely under oath about the evidence of advertising the sexual services of the victim Bates by Caitlyn Druckenmiller who claimed to work with Diaz's sex trafficking business.[1]  *Id.* at 12-13.  He claims that Detective Donahue also tampered with evidence, obstructed justice, and falsely testified under oath related to evidence indicating that Diaz dropped off a prostitute at a motel on February 28, 2018 and about Diaz's arrest for possession of cocaine and marijuana.  *Id.* at 13-14.  He further claims that both Olivier and Donahue testified that they knew Diaz was not involved in sex trafficking but made the evidentiary case against Diaz anyway.  *Id.* at 14.

Diaz also complains that Schiffman had Druckenmiller brought to court to testify against Diaz without restraints so that the jury would not know she too was incarcerated.  He claims that Druckenmiller testified that Diaz paid her for sex multiple times and that Diaz stole her advertising account which featured the victim Bates.  *Id.* at 15.  He claims she testified that she wanted to put Diaz in jail because he did not want to have a relationship with her, and she only testified out of fear that Diaz would retaliate if he was not in jail.  *Id.* at 15-16.

Diaz claims that FBI Agent Terry testified falsely and tampered with evidence.  *Id.* at 16.  He claims she told him it was her job to incarcerate him even if she had to lie about him being a pimp.  She also admitted that she tampered with evidence when she unlocked a cellphone during her investigation.  *Id.*

Diaz claims that Lt. Cdr. Hare testified that he knew Diaz did not sex traffic the victim but as a white officer, it was necessary for him to do the wrong thing, like the time he covered up a human trafficking and rape by actor Steven Segal who had been with the JPSO.  *Id.*

---

[1] Diaz asserts his belief that Druckenmiller is deceased, so he has not named her as a defendant.  ECF No. 4, at 28.

Diaz also claims that the victim Bates gave both Agent Terry and Sgt. Olivier false information about Diaz when she claimed Diaz recruited her for prostitution through Facebook. *Id*. at 16-17. Bates later denied that Diaz trafficked her for sex and that she only said he did because he did not want to be in a relationship with her. *Id*. at 18. ADA Beckner threatened to prosecute Bates if she did not testify against Diaz. *Id*. Diaz also claims that Bates told him she was pregnant and could not go to jail, so she testified that he sex trafficked her. *Id*. She testified to the jury that she was white and Diaz was black and representing himself, so the jury knew what to do, allegedly threatening the two black jurors if they did not find Diaz guilty. *Id*. He claims she also testified that she never used drugs until she met Diaz, which was contradicted by evidence that she used drugs and prostituted herself before she met Diaz. *Id*. at 18-19.

Diaz further contends that, on February 12, 2020, after the jury entered the guilty verdict, juror Maggio stood up and said she did what the State asked her to do and now she wanted the State to know that Diaz went to school with her daughter. *Id*. at 19.

Diaz also claims that he made multiple attempts to get a mistrial but Judge Enright forced the trial to continue. *Id*. He claims that the Judge, Schiffman, and Beckner deprived him of the right to introduce evidence and excerpts of evidence from a compact disc. *Id*. at 19-20. He claims that Judge Enright ordered Schiffman to print out portions from the compact disc for Diaz to use in his defense. Beckner told Diaz she would make the copies, but Schiffman said she would take care of it as lead prosecutor. Schiffman, however, never gave him the copies. *Id*. at 20. As a result, Diaz had to use the compact disc at trial, and one juror said the jury could not see the evidence he was showing. Judge Enright told the juror to sit down and forced Diaz to continue. Schiffman violated the court's order and her duty to assist in the administration of justice. *Id*. He

claims she also told Diaz that she and other female prosecutors were being sexually harassed by a male district attorney and she was being sexually abused by Judge Enright.  *Id.* at 21.

Diaz contends that the court reporter, defendant Patin, omitted all of the foregoing events during the February 10-12 trial, from the transcribed record.  *Id.* at 21.

Diaz further claims that, at his sentencing hearing on March 2, 2020, Judge Enright stated that he became a judge to incarcerate black people, that the jury reached the wrong verdict because Diaz was not guilty but the decision was fair and just so that the white race would reign supreme, and that he had a .357 caliber revolver that he brought to murder Diaz but he left it in his car.  *Id.* at 21.  Diaz also claims that the Judge continued explaining how he wanted to do away with black people and tried to get the other black inmates in the courtroom to harm Diaz by telling them Diaz was a snitch and a homosexual.  *Id.* at 22.  Schiffman then told Diaz that she spoke to inmates in the Department of Corrections, and they agreed to murder Diaz when he arrived.  *Id.*  She also admitted to showing Bates evidence before trial so she could testify falsely.  *Id.*

Again, Diaz claims, the court reporter Patin omitted all of these events from the March 2, 2020, hearing from the record.  *Id.* at 23.

Diaz further claims that, on August 19, 2020, Judge Enright told Sgt. Trent Brouilliette and Sgt. Lori Spears from Raymond Laborde Correctional Center ("RLCC") that Diaz did not commit the crime and that he wanted bodily harm done to Diaz.  *Id.*  Diaz contends that the Judge told Dr. Salcedo about an exculpatory letter from victim Bates which the judge threw in the trash because he did not want the appellate courts to see it so Diaz would remain in jail.  *Id.*  Diaz also claims that Judge Enright stated that he spoke to Diaz's appellate counsel Lieu Vo Clark to ensure that the appeal would be ineffective.  *Id.* at 24.  Diaz later received a letter from Clark indicating that the appellate project would not take Diaz's case to the Louisiana Supreme Court.  *Id.*

Again, Diaz claims, the court reporter Patin omitted all of these events during the August 19, 2020, hearing from the record.  *Id*. at 24.

Diaz contends that, on September 30, 2020, Dr. Salcedo testified falsely under oath that he visited Diaz twice (on August 14 and 24, 2020), but he only visited Diaz once.  *Id.* at 24.  Diaz also claims that when Dr. Salcedo tried to get out of testifying, Judge Enright threatened him if he did not find Diaz incompetent.  Dr. Salcedo then attempted to have Diaz placed in a mental institution as incompetent, knowing that was not true.  *Id*. at 24.  Diaz further claims that Judge Enright later admitted to making threats, racial remarks, and sexual advances towards Diaz.  *Id.* at 25.  Diaz contends that the Judge indicated his intent to transition to a woman to be Diaz's wife, pay Diaz for sex, and for Diaz to impregnate him.  *Id.*

Diaz also asserts that his appointed counsel Bourg violated the attorney client privilege by disclosing facts from Diaz's prior case to Judge Enright.  *Id.*  Diaz claims that she too announced that she wanted to be Diaz's wife and if he refused, she would bring false rape charges against him.  *Id.*  He further alleges that Bourg told Judge Enright that she tried to have two clients harm Diaz.  *Id.*  Diaz also claims that Lt. Chelsea Longino from RLCC told the court that Diaz and Bourg had sexually explicit conversations over Zoom on August 19, 2020, and counsel asked him to expose and stroke his genitals.  *Id*. at 26.

Diaz claims that ADA Kellie Rish admitted that she and AUSA Schiffman had been sexually abused by the same male district attorney.

Again, Diaz claims, the court reporter Patin omitted all of these events during the September 30, 2020, hearing from the record.  *Id*. at 26.

Diaz also claims that, on February 3, 2021, Bourg told ADA Matthew Whitworth to tell ADA Schiffman that Bourg had sex with Diaz when Whitworth was not present in court on

December 9, 2020. When Judge Enright asked what she meant, Bourg described the sex acts she and Diaz engaged in over Zoom. *Id*. at 26-27. Bourg then told the Judge they needed to ensure that Diaz went to jail, and the Judge instructed the court reporter Patin to tamper with the record. *Id*. at 27.

Again, Diaz claims, the court reporter Patin omitted all of these events during the February 3, 2021, hearing from the record. *Id*. at 27.

On April 12, 2021, Judge Enright refused to recuse himself or have another judge hold a recusal hearing based on Diaz's motion related to the Judge's alleged threats, sexual advances, and racial remarks. *Id.* at 27. ADA Whitworth allegedly witnessed these acts by the Judge and conveyed them to Donna Quintanella when she testified as a latent fingerprint expert during the habitual offender hearing. *Id*. 27-28.

Again, Diaz claims, the court reporter Patin omitted all of these events during the April 12, 2021, hearing from the record. *Id*. at 28.

In addition, Diaz claims that the minute clerk Abadie tampered with the minutes to have them match the altered transcripts produced by Patin. *Id.* at 28. He contends that the audio recordings of the hearings held February 10, 11, and 12, 2020, March 2, 2020, April 19, 2020, September 30, 2020, February 3, 2021, and April 12, 2021, will evidence the lies. *Id*. at 28.

Diaz demand a jury trial and seeks $100 million in damages, court costs, and attorneys' fees. *Id*. at 31.

## II.   LEGAL STANDARDS

### A.   Statutorily Required Screening

As soon as practicable after docketing, the court must review a prisoner's § 1983 complaint

for a cognizable claim, or dismiss the complaint if it is frivolous and/or fails to state a claim.[2]  A claim is frivolous if it "lacks an arguable basis in law or fact."[3]  A claim lacks an arguable basis in law if it is "based on an indisputably meritless legal theory, such as if the complaint alleges the violation of a legal interest which clearly does not exist."[4]  A factually frivolous claim alleges only facts that are "'clearly baseless,' . . . are 'fanciful,' 'fantastic,' and 'delusional' . . . [or] rise to the level of the irrational or wholly incredible . . . ."[5]  A court may not dismiss a claim simply because the facts are "unlikely."[6]

A complaint fails to state a claim on which relief may be granted when the factual allegations do not rise above a speculative level, with the assumption that all factual allegations in the complaint are true, even if doubtful.[7]  The Rule 12(b)(6) analysis is generally confined to a review of the complaint and its proper attachments.[8]  The Fifth Circuit has summarized the standard for Rule 12(b)(6):

> "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  A claim for relief is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  A claim for relief is implausible on its face when "the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct."[9]

---

[2] 28 U.S.C. § 1915A; 28 U.S.C. § 1915(e)(2)(B); *Martin*, 156 F.3d at 579-80.

[3] *Davis v. Scott*, 157 F.3d 1003, 1005 (5th Cir. 1998); *Reeves v. Collins*, 27 F.3d 174, 176 (5th Cir. 1994).  The law "accords judges not only the authority to dismiss a claim based on an indisputably meritless legal theory, but also the unusual power to pierce the veil of the complaint's factual allegations and dismiss those claims whose factual contentions are clearly baseless."  *Macias v. Raul A.*, 23 F.3d 94, 97 (5th Cir. 1994) (quoting *Neitzke v. Williams*, 490 U.S. 319, 327 (1989)).

[4] *Davis*, 157 F.3d at 1005 (quoting *McCormick v. Stalder*, 105 F.3d 1059, 1061 (5th Cir. 1997)).

[5] *Moore v. Mabus*, 976 F.2d 268, 270 (5th Cir. 1992) (quoting *Denton v. Hernandez*, 504 U.S. 25, 32-33 (1992)).

[6] *Id.* at 270.

[7] *Garrett v. Thaler*, 560 F. App'x 375, 377 (5th Cir. 2014) (per curiam) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

[8] *Walch v. Adjutant Gen.'s Dep't*, 533 F.3d 289, 293 (5th Cir. 2008) (citation omitted).

[9] *Harold H. Huggins Realty, Inc. v. FNC, Inc.*, 634 F.3d 787, 796 (5th Cir. 2011) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), and quoting *Twombly*, 550 U.S. at 544).

"[W]hen evaluating a motion to dismiss under Rule 12(b)(6), a court must accept[ ] all well-pleaded facts as true and view[ ] those facts in the light most favorable to the plaintiff."[10]  Thus, the court should assume the veracity of all well-pleaded allegations, viewing them in the light most favorable to the plaintiff, "'and then determine whether they plausibly give rise to an entitlement to relief.'"[11]

In comparing a dismissal for failure to state a claim under 28 U.S.C. § 1915(e) and FED. R. CIV. P. 12(b)(6), *Neitzke v. Williams*, 490 U.S. 319 (1989), held that a claim that is dismissed under one rule does not "invariably fall afoul" of the other.[12]  If an *in forma pauperis* complaint lacks even an arguable basis in law, dismissal is appropriate under both Rule 12(b)(6) and § 1915(e).[13] "When a complaint raises an arguable question of law which the district court ultimately finds is correctly resolved against the plaintiff, dismissal under Rule 12(b)(6) is appropriate; however, dismissal under [§ 1915(e)'s] frivolousness standard is not."[14]

## B.    Required Elements of a § 1983 Claim

Section 1983 creates a damages remedy for the violation of federal constitutional or statutory rights under color of state law:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any . . . person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities

---

[10] *Id.* at 803 n.44 (quoting *True v. Robles*, 571 F.3d 412, 417 (5th Cir. 2009) (internal quotations omitted)); *accord Murchison Capital Partners, L.P. v. Nuance Commc'ns, Inc.*, 625 F. App'x 617, 618 n.1 (5th Cir. 2015) (citing *Wood v. Moss*, 572 U.S. 744, 755 n.5 (2014)); *Maloney Gaming Mgt., L.L.C. v. St. Tammany Par.*, 456 F. App'x 336, 340 (5th Cir. 2011) (quoting *Elsensohn v. St. Tammany Par. Sheriff's Ofc.*, 530 F.3d 368, 371 (5th Cir. 2008) (quoting *Iqbal*, 556 U.S. at 696); *In re Katrina Canal Breaches Litigation*, 495 F.3d at 205 n.10 (5th Cir. 2017)).
[11] *Jabary v. City of Allen*, 547 F. App'x 600, 604 (5th Cir. 2013) (quoting *Iqbal*, 556 U.S. at 664); *see also Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 338 (5th Cir. 2008)).
[12] *Moore*, 976 F.2d at 269 (quoting *Neitzke*, 490 U.S. at 326) (citing 28 U.S.C. § 1915(d)) (current version at 28 U.S.C. § 1915(e)).
[13] Id.
[14] Id.

secured by the Constitution and laws, shall be liable to the party injured in an action at law . . . .[15]

"The purpose of § 1983 is to deter state actors from using their badge of authority to deprive individuals of federally guaranteed rights and to provide relief to victims if such deterrence fails."[16]

A plaintiff must satisfy three elements to establish § 1983 liability:

(1)    deprivation of a right secured by the U.S. Constitution or federal law;
(2)    that occurred under color of state law; and
(3)    was caused by a state actor.[17]

Because § 1983 merely provides a remedy for designated rights, rather than creating any substantive rights, "an underlying constitutional or statutory violation is a predicate to liability."[18] This requires the plaintiff to identify both the constitutional violation and the responsible person acting under color of state law.[19] "The traditional definition of acting under color of state law requires that the defendant in a § 1983 action have exercised power 'possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law.'"[20]

## III.    <u>ANALYSIS</u>

### A.    *Heck* Doctrine

Diaz challenges the constitutionality of his state criminal proceedings in Jefferson Parish which led to his current conviction and sentence.  In *Heck v. Humphrey*, 512 U.S. 477 (1994), the Supreme Court held that a claim under § 1983 is barred if success in the suit would necessarily imply the invalidity of an outstanding criminal conviction or a plaintiff's present confinement.

---

[15] 42 U.S.C. § 1983.

[16] *Wyatt v. Cole*, 504 U.S. 158, 161 (1992) (citing *Carey v. Piphus*, 435 U.S. 247, 254-57 (1978)).

[17] *Victoria W. v. Larpenter*, 369 F.3d 475, 482 (5th Cir. 2004) (citation omitted).

[18] *Harrington v. Harris*, 118 F.3d 359, 365 (5th Cir. 1997) (citation omitted).

[19] *Flagg Bros., Inc. v. Brooks*, 436 U.S. 149, 156 (1978).

[20] *West v. Atkins*, 487 U.S. 42, 49 (1988) (quoting *United States v. Classic*, 313 U.S. 299, 326 (1941)); *accord Thibodeaux v. Bordelon*, 740 F.2d 329, 333 (5th Cir. 1984).

This limitation avoids collateral attacks on convictions that are still outstanding.[21]    The *Heck* doctrine applies to civil actions for both monetary and injunctive or other relief.[22]

In this case, success on Diaz's claims, including those of an alleged unfair trial, false evidence, biased tribunal, conspiracy to violate his rights and cause his conviction, and other due process violations, imply the invalidity of his state court conviction and current imprisonment. Diaz does not, however, allege that his conviction has been overturned, invalidated, or in any way called into question as required by *Heck* and its progeny.    Accordingly, Diaz's § 1983 claims cannot proceed.    Indeed, his § 1983 claims of bias tribunal, prejudicial proceedings, and falsification of evidence against the presiding state court judge, court personnel, prosecutors, appointed counsel, sanity commission doctor, and investigating officers, are the type of collateral challenges to a conviction that are barred under *Heck*.[23]

Likewise, Diaz's overarching claim that defendants (all named in only an official capacity) engaged in a conspiracy to violate his rights and cause his conviction is intertwined with his challenge to the constitutionality of his conviction and current confinement.    The conspiracy claim asserted against all defendants, therefore, is similarly barred by *Heck*.[24]    For these reasons, Diaz's claims challenging the constitutionality of his conviction and imprisonment must be dismissed with prejudice pending his compliance with the conditions expressed in *Heck*.[25]

---

[21] *Heck*, 512 U.S. at 484-85.

[22] *Clarke v. Stalder*, 154 F.3d 186, 189 (5th Cir. 1998) (*en banc*) (citing *Edwards v. Balisok*, 520 U.S. 641 (1997)).

[23] *See, e.g., Hamilton v. Lyons*, 74 F.3d 99, 103 (5th Cir. 1996) (*Heck* barred claim that defendant altered and destroyed evidence because "[c]onvictions tainted by the suppression, destruction, or alteration of material evidence violate a defendant's Fourteenth Amendment right to due process . . ." and if a defendant altered and destroyed evidence, "judgment would necessarily imply the invalidity of his subsequent convictions and sentences on those charges") (citing *Brady v. Maryland*, 373 U.S. 83, 87 (1963), and *Heck*, 512 U.S. at 486-87).

[24] *Connors v. Graves*, 538 F.3d 373, 378 (5th Cir. 2008).

[25] *Johnson v. McElveen*, 101 F.3d 423, 424 (1996) (dismissal under *Heck* is with prejudice until the *Heck* conditions are met).

### B.     Grounds for Dismissal Apart from *Heck*

The United States Fifth Circuit requires a court to address dismissal of immune defendants and cull those claims that cannot proceed under § 1983 without regard to a *Heck* bar.[26]  In this case, Diaz has asserted claims against each of the defendants *only* in their official capacities.  As such, these claims must be dismissed on grounds apart from the *Heck* doctrine.

If a reviewing court were to determine that a defendant is not clearly immune or improperly named in an official capacity for the reasons provided below, the claims against that defendant (and all defendants) would still be subject to dismissal under *Heck* for the reasons provided above.

#### 1.   Judge Enright

Judge Enright has been sued only in his official capacity as a judge seated in the 24th Judicial District Court for the State of Louisiana in Jefferson Parish.  However, a state official in his official capacity is not considered a "person" subject to suit under § 1983.[27]  Further, as a state court judge, any judgment against Judge Enright in his official capacity would be satisfied out of the state treasury rendering the State liable for any alleged wrongs.[28]  Thus, the claims against Judge Enright in an official capacity are considered claims against the State of Louisiana itself, and are barred by the Eleventh Amendment.[29]  The Eleventh Amendment to the United States

---

[26] *See Busick v. City of Madison, Miss.*, 90 F. App'x 713, 714 (5th Cir. 2004) (recognizing that the district court should consider grounds for dismissal other than *Heck*); *see also Boyd v. Biggers*, 31 F. 3d 279, 284 (5th Cir. 1994) (immunity must be considered as a threshold matter prior to applying *Heck*).

[27] *Will v. Mich. Dept. of St. Police*, 491 U.S. 58, 71 (1989) (suit against a state official in official capacity is not a suit against the individual person but a suit against the official's office); *Boyd v. Lasher*, No. 09-7645, 2010 WL 677663, at *2 (E.D. La. Feb. 24, 2010) (ordering adopting Report and Recommendation) (a judge is a state official and state officials acting in that capacity are not considered to be "persons" within the meaning of § 1983); *McCloud v. Craig*, No. 09-3287, 2009 WL 2515609, at *5 (E.D. La. Aug. 17, 2009) (same).

[28] LA. STAT. ANN. § 13:5108.1; *Voisin's Oyster House, Inc. v. Guidry*, 799 F.2d 183, 188 (5th Cir. 1986).

[29] *Wallace v. Texas Tech Univ.*, 80 F.3d 1042, 1047 n. 3 (5th Cir.1996) ("Suits against state officials in their official capacity are considered to be suits against the individual office, and so are generally barred as suits against the state itself."); *Rackley v. Louisiana*, No. 07-504, 2007 WL 1792524 at *3 (E.D. La. Jun. 21, 2007) (suit against Louisiana state judge in an official capacity is suit against the State); *Voisin's Oyster House, Inc.*, 799 F.2d at 188; *Doris v. Van*

Constitution prohibits suit against a State in federal court without the State's consent.[30] The State of Louisiana has not waived its sovereign immunity or consented to the exercise of federal judicial power in civil actions against it.[31]

Therefore, the claims against Judge Enright in his official capacity are frivolous, seek relief against an immune defendant, and otherwise fail to state a claim for which relief can be granted. These claims must be dismissed for that reason pursuant to 28 U.S.C. § 1915(e) and § 1915A.

### 2. Court Reporter Patin and Deputy Clerk Abadie

Diaz sued both court report Patin and the court's minute clerk Abadie in their official capacities. Diaz claims that Patin and Abadie omitted from the transcripts and minutes prejudicial, biased, and alleged sexually charged comments by the Judge and prosecutors during court hearings over the course of his prosecution through sentencing. He contends that many if not all of the omissions were made at the direction of Judge Enright to prevent Diaz from having the information as evidence to support his motion to recuse and other review of his conviction.

Like Judge Enright, both Patin and Enright as state court employees in an official capacity are not persons under § 1983 and instead enjoy Eleventh Amendment immunity from suit.[32] Therefore, the official capacity claims against defendant Patin and Abadie are also frivolous, seek relief against immune defendants, and otherwise fail to state a claim for which relief can be

_Davis_, No. 08-4138, 2009 WL 382653, at *2 (E.D. La. Feb. 12, 2009) (judgment against a Louisiana state judge in official capacity would be satisfied out of the state treasury rendering a claim against the judge a claim against the state).

[30] _Edelman v. Jordan_, 415 U.S. 659 (1974).

[31] LA. STAT. ANN. § 13:5106(A); LA. CONST. art. I, § 26; _Harris v. La. Office of Juvenile Justice_, No. 18-13356, 2019 WL 2617175, at *4 (E.D. La. June 26, 2019) (citing _Holliday v. Bd. of Sup'rs of LSU Agr. & Mech. Coll._, 149 So. 3d 227, 229 (La. 2014)).

[32] _Gilbert v. Cates_, No. 17-4786 c/w 17-12195, 2018 WL 3417906, at *16 (E.D. La. Jul. 13, 2018) (dismissing claims for monetary relief against state court reporter in her official capacity under the Eleventh Amendment); _Lawrence v. Lawson_, No. 22-3040, 2023 WL 2969243, at *5 (E.D. La. Apr. 17, 2023) (same); _McNeil v. Welborn_, No. 21-081, 2022 WL 256292, at *1 (M.D. La. Jan. 26, 2022) (holding that minute clerks are lower state court officials who are not persons for purposes of § 1983 and otherwise enjoy Eleventh Amendment immunity in an official capacity suit).

granted.  These claims must be dismissed for that reason pursuant to 28 U.S.C. § 1915(e) and § 1915A.

### 3.    District Attorney Connick, Assistant District Attorney Beckner, Detective Ian Donahue, Sergeant Michael Olivier, Lieutenant Commander William Hare, Sergeant Eva Banner

Claims against District Attorney Connick, Assistant District Attorney Beckner, and the JPSO deputies Det. Donahue, Sgt. Olivier, Lt. Cdr. Hare, and Sgt. Banner, each in their official capacity, is equivalent to suit against Jefferson Parish.[33]  In that respect, "municipalities cannot be held liable for constitutional torts under § 1983 'on a *respondeat superior* theory,' but they can be held liable 'when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury.'"[34]  Thus, to state a non-frivolous claim against a district attorney or sheriff's deputy in an official capacity, the plaintiff must establish that the named defendant is a final Parish policymaker and identify the Parish policy or custom which allegedly caused the deprivation of his constitutional rights.[35]

Diaz has not alleged any claims involving District Attorney Connick in his complaint, and certainly has not alleged that either District Attorney Connick or Assistant District Attorney Beckner or any of the JPSO deputies were final policy-makers for the Parish.  Diaz also has not

---

[33] *Connick v. Thompson*, 563 U.S. 51, 59-60 (2011) (a district attorney in Louisiana is a Parish official and claims against Orleans Parish District Attorney in an official capacity are addressed under the standards of *Monell v. Dept. of Soc. Servs. of City of New York*, 436 U.S. 658, 691 (1978)); *Burge v. Par. of St. Tammany*, 187 F. 3d 452, 470 (5th Cir. 1999) ("For purposes of 'official capacity' suits under § 1983, the district attorney's office resembles other local government entities."); *Bean v. Pittman*, No. 14-2210, 2015 WL 350284, at *2 (E.D. La. Jan. 26, 2015) (official capacity against Jefferson Parish sheriff's deputies is suit against the Parish through the Sheriff's Office); *see also Owen v. City of Independence*, 445 U.S. 622, 638 (1980) (refusing to apply immunities for personal liability to *Monell* claims against local governments because "there is no tradition of immunity for municipal corporations").

[34] *Burge*, 187 F. 3d at 470 (quoting *Monell*, 436 U.S. at 691).

[35] *Rinker v. New Orleans Dist. Atty.*, No. 10-0810, 2010 WL 2773236 at *4-5 (E.D. La. Jun. 15, 2010), *R&R adopted by* 2010 WL 2773383, at *1 (E.D. La. Jul. 12, 2010) (citing *Murray v. Town of Mansura*, 76 F. App'x 547, 549 (5th Cir. 2003); *Treece v. Louisiana*, 74 F. App'x 315, 316 (5th Cir. 2003)).

identified any Jefferson Parish policy that led to a constitutional violation during his prosecution or that resulted in any alleged bias, prejudice, conspiracy, or sexual misconduct that caused him constitutional injury.  Therefore, he has not stated any basis for a *Monell* claim against these defendants in their official capacities.  Diaz's claims, if any, against District Attorney Connick and his claims against Assistant District Attorney Beckner and the JPSO officers, each in their official capacities, are frivolous and otherwise fail to state a claim for which relief can be granted.  The claims should be dismissed pursuant to 28 U.S.C. § 1915(e), § 1915A.

### 4.  Former ADA, Now AUSA Schiffman and FBI Agent Terry

Diaz has sued AUSA Schiffman in her official capacity as an Assistant United States Attorney challenging alleges actions taken while she was in the role as prosecutor and Assistant District Attorney for Jefferson Parish.  He also named FBI Agent Terry in her official capacity as an investigator for the FBI.  Suits against federal government officers in their official capacities are suits against the government itself.[36]  Thus, suit against these defendants in an official capacity equates to suit against the United States.[37]  However, "[a]bsent a waiver, sovereign immunity shields the Federal Government and its agencies from suit."[38]  "[A] waiver of the traditional sovereign immunity 'cannot be implied but must be unequivocally expressed.'"[39]  Sovereign

---

[36] *Kentucky v. Graham*, 473 U.S. 159 (1985) ("Official-capacity suits . . . generally represent only another way of pleading an action against an entity of which an officer is an agent.  As long as the government entity receives notice and an opportunity to respond, an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity.") (citations and internal quotation marks omitted); *Todd v. Hank*, 263 F.3d 162, 162 (5th Cir. 2001) ("Official capacity suits against federal employees are generally treated as suits against the United States.").

[37] *Smart v. Holder*, 368 F. App'x 591, 593 (5th Cir. 2010).

[38] *FDIC v. Meyer*, 510 U.S. 471 (1994); *see also Garcia v. United States*, 666 F.2d 960, 966 (5th Cir. 1982) ("An individual cannot sue the United States without its consent.").

[39] *United States v. Testan*, 424 392 (1976) (quoting *United States v. King*, 395 U.S. 1 (1969)).

immunity is jurisdictional in nature and the burden falls on the plaintiff to show an unequivocal waiver of sovereign immunity by Congress.[40]

Diaz does not allege or demonstrate that the federal government has waived its sovereign immunity to allow suit against defendants Schiffman or Terry in their official capacities.[41]  This court lacks jurisdiction over Diaz's suit for monetary damages against these federal defendants in an official capacity.

Reading his claims broadly, Diaz challenges Schiffman's conduct while she was acting as a prosecutor in his Jefferson Parish criminal trial, prior to her becoming an AUSA.  To the extent Diaz intended to name Schiffman in her official capacity as a Jefferson Parish Assistant District Attorney, and not in her current role as an AUSA, his claims are still frivolous.  As discussed previously, suit against Schiffman in her official capacity as an ADA, is equivalent to suit against Jefferson Parish.[42]  As such, he would have to established that ADA Schiffman was a final Parish policymaker and identify the Parish policy or custom which allegedly caused the deprivation of his constitutional rights.[43]  As with the other prosecutors, Diaz has not alleged that ADA Schiffman was final policy-maker for the Parish and has identified no Jefferson Parish policy that led to a constitutional violation during his prosecution.  Diaz has not stated any basis for a *Monell* claim against ADA Schiffman in her official capacity.  Therefore, his claims against Schiffman in her

---

[40] *Meyer*, 510 U.S. at 475; *St. Tammany Parish, ex rel. Davis v. FEMA*, 556 F.3d 307, 315 (5th Cir. 2009).

[41] Congress has not waived the United States' sovereign immunity via passage of § 1983. *See Perez v. United States*, No. 10-246, 2011 WL 2618881, at *3 (S.D. Tex. July 1, 2011) (rejecting the argument that the United States waived sovereign immunity under § 1983); *Affiliated Prof'l Home Health Care Agency v. Shalala*, 164 F.3d 282, 286 (5th Cir. 1999).

[42] *Connick*, 563 U.S. at 59-60; *Burge*, 187 F. 3d at 470.

[43] *Rinker v. New Orleans Dist. Atty.*, No. 10-0810, 2010 WL 2773236 at *4-5 (E.D. La. Jun. 15, 2010), *R&R adopted by* 2010 WL 2773383, at *1 (E.D. La. Jul. 12, 2010) (citing *Murray v. Town of Mansura*, 76 F. App'x 547, 549 (5th Cir. 2003); *Treece v. Louisiana*, 74 F. App'x 315, 316 (5th Cir. 2003)).

official capacity as an Assistant District Attorney are frivolous and otherwise fail to state a claim for which relief can be granted.

For these reasons, Diaz's official capacity claims against Schiffman and Terry are frivolous, seek relief from an immune defendant, and otherwise fail to state a claim for which relief can be granted and they must be dismissed pursuant to 28 U.S.C. § 1915(e) and § 1997A.

### 5. Appointed Counsel Renee Bourg

Diaz named his appointed counsel Bourg as a defendant in her official capacity. However, a public defender like Bourg has no official capacity or authority to act on behalf of the State or Parish in which they are appointed to represent a criminal defendant.[44] They are not considered persons for purposes of § 1983.[45] For this reason, Bourg is not a state official and has no official capacity under which to be sued under § 1983. Diaz's claims against her are frivolous and otherwise fail to state a claim for which relief can be granted and must be dismissed pursuant to 28 U.S.C. § 1915(e) and § 1997A.

### 6. Megan Bates

Diaz names the victim of his crimes, Megan Bates, as a defendant in her official capacity. Diaz does not allege that Bates was a state official or any basis to consider her to be acting under color of state law when she fell victim to his crimes or at any time thereafter during his criminal proceedings. A private person generally is not considered a state actor under § 1983 cloaked with

---

[44] *See Polk County v. Dodson*, 454 U.S. 312 (1981) (public defenders do not act under color of state law under 42 U.S.C. § 1983 when performing the traditional functions of counsel to a criminal defendant); *Mills v. Crim. Dist. Ct. #3*, 837 F.2d 677, 679 (5th Cir. 1988) ("[S]ection 1983 claims require that the conduct complained of be done under color of law, and private attorneys, even court-appointed attorneys, are not official state actors, and generally are not subject to suit under section 1983.").
[45] *Id*.

authority to act on behalf of the government.[46]  "'Mere[] private conduct, no matter how discriminatory or wrongful', is excluded from § 1983's reach."[47]

Without some connexity or capacity establishing action by her on behalf of a government entity, Bates as a private person has no apparent official capacity under which to be sued or held liable under § 1983.[48]  Any claims against Bates as a private actor named in an official capacity are frivolous and otherwise fail to state a claim for which relief can be granted pursuant to 28 U.S.C. § 1915(e) and § 1997A.

### 7.  Dr. Salcedo

Diaz names Dr. Salcedo in his official capacity as a forensic psychologist.  Diaz does not, however, indicate any employment by or connection to a government entity to establish that Dr. Salcedo was a state official.  Instead, Diaz's only reference is to Dr. Salcedo's role as an appointed psychologist to evaluate Diaz's mental capacity during the criminal proceeding.

As a private psychologist, Dr. Salcedo would have no official capacity under which to be sued.[49]  Even if Dr. Salcedo were considered a state employee, any claim against him in his official capacity would be considered one against the State and barred by the Eleventh Amendment for the reasons outlined previously.[50]  Nevertheless, with no basis to designate him as a state official, the claims asserted against Dr. Salcedo as a private actor named in an official capacity are frivolous

---

[46] *Dodson*, 454 U.S. at 318; *Ballard v. Wall*, 413 F.3d 510, 518 (5th Cir. 2005).

[47] *Cornish v. Corr'l Servs. Corp.*, 402 F.3d 545, 549 (5th Cir. 2005) (citation omitted).

[48] Any suggestion that Bates conspired with state officials to falsely testify and garner Diaz's conviction would be barred by *Heck*.

[49] *Cornish*, 402 F.3d at 549; *Duhon v. Healthcare Profs. Foundation of La.*, No. , 2022 WL 266899, at *3 (E.D. La. Jan. 28, 2022) ("A state entity's referral alone cannot transform a private psychiatrist into a state actor.").

[50] *See Baldwin v. Univ. of Tex. Med. Branch at Galveston*, 945 F. Supp. 1022, 1030-31 (S.D. Tex. 1996) (dismissing official capacity claims for monetary relief against defendant doctors at the state facility); *Oliver v. Scott*, 276 F.3d 736, 742 (5th Cir. 2002) ("We . . . have held that the Eleventh Amendment bars recovering § 1983 money damages from TDCJ officers in their official capacity.").

and otherwise fail to state a claim for which relief can be granted and must be dismissed pursuant to 28 U.S.C. § 1915(e) and § 1997A.

## IV.    **RECOMMENDATION**

It is therefore **RECOMMENDED** that plaintiff Jared Douglas Diaz's 42 U.S.C. § 1983 claims challenging his conviction and imprisonment based on an unfair trial, biased tribunal, conspiracy to violate his rights and cause his conviction, and other due process violations during his state court criminal proceedings be **DISMISSED WITH PREJUDICE** until such time as the conditions provided in *Heck* are met.

It is further **RECOMMENDED** that Diaz's § 1983 claims against defendants Judge Stephen Enright, Jr., Court Reporter Gina Patin, and Deputy Clerk Nicole Abadie, each in an official capacity, and in light of the doctrine of Eleventh Amendment immunity, be **DISMISSED WITHOUT PREJUDICE** as frivolous, for failure to state a claim for which relief can be granted, and/or for seeking relief from an immune defendant pursuant to 28 U.S.C. § 1915(e) and § 1915A.

It is further **RECOMMENDED** that Diaz's § 1983 claims against Assistant United States Attorney Lynn Schiffman and FBI Agent Jennifer Terry, each in an official capacity, and in light of the doctrine of Sovereign Immunity, be **DISMISSED WITHOUT PREJUDICE** as frivolous, for failure to state a claim for which relief can be granted, and/or for seeking relief from an immune defendant pursuant to 28 U.S.C. § 1915(e) and § 1997A.

It is further **RECOMMENDED** that Diaz's § 1983 claims against District Attorney Paul Connick, Jr., Assistant District Attorney Brittany Beckner, Assistant District Attorney Lynn Schiffman, Detective Ian Donahue, Sergeant Michael Olivier, Lieutenant Commander William Hare, and Sergeant Eva Banner, each in an official capacity, be **DISMISSED WITH**

**PREJUDICE** as frivolous and otherwise fail to state a claim for which relief can be granted pursuant to 28 U.S.C. § 1915(e) and § 1915A.

It is further **RECOMMENDED** that Diaz's § 1983 claims against Assistant Public Defender Renee Bourg, Megan Bates, and Dr. Rafael Salcedo, as private actors named in official capacities, be **DISMISSED WITH PREJUDICE** as frivolous and otherwise fail to state a claim for which relief can be granted pursuant to 28 U.S.C. § 1915(e) and § 1915A.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation **within fourteen (14) days** after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object.[51]

New Orleans, Louisiana, this 25th day of September, 2023.



DONNA PHILLIPS CURRAULT
UNITED STATES MAGISTRATE JUDGE

---

[51] *Douglass v. United Servs. Auto. Assn.*, 79 F.3d 1415, 1430 (5th Cir. 1996). *Douglass* referenced the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend the period to fourteen days.